17-10228. Appellant, ready to proceed. Is the appellee ready to proceed? All right, you may proceed. Good morning, may it please the court. My name is Craig Chet. I represent the appellant. When this case was on direct appeal prior to any briefing, the Supreme Court decided Madison-Jack v. United States where the issue was, quote, what the government must prove to obtain a conviction under 18 U.S.C. 1425a, the same statute under which Mr. Nepal was prosecuted and convicted. It is black letter law under the Supreme Court's decision in Griffith v. Kentucky and an unbroken line of Fifth Circuit opinions that follow that decision that when the Supreme Court decides a new rule for the conduct of a criminal prosecution, the new rule applies to any case pending on direct appeal. This applies particularly with the Supreme Court as it did in this case change the substantive elements of an offense and that is exactly what has happened in this case. Madison-Jack was a case where the with making a false statement in an immigration proceeding with the purpose of obtaining naturalization. In Madison-Jack, the Supreme Court held that the government must establish and that an illegal act by the defendant played some role in the acquisition of naturalization. That when the illegal act is a false statement, that means demonstrating to an official to whom it would have mattered that the statement was justified on its own, justified denying naturalization or would predictably have led to other facts warranting denial of the naturalization and the defendant could not show he was otherwise eligible for naturalization. In his concurring opinion, Justice Gorsuch, joined by Justice Thomas, succinctly noted that the court's opinion provided two new announced tests, the second with two more subparts and a new affirmative defense. Despite the clear dictates of Madison-Jack, the government has continued to insist that Madison-Jack did not really change the law. They have pointed to several Court of Appeals decisions and to a civil denaturalization case from the Supreme Court that define materiality in a variety of ways. They say that the false statements are material if they suggest disqualification or that raise a fair inference that a disqualifying fact exists or that would lead to discovery of facts relevant to a petition for naturalization or that has a natural tendency to influence the decisions of an immigration service. In the trial of this case, the government's expert, Agent Dobbins, stated that a statement that is material if it merely affects the decision to grant or to deny naturalization. What makes it structural? Pardon me? What makes it structural? What makes it structural is that Mr. Nepal was the question is would he have pleaded guilty? Isn't that what structural goes to in this case? I don't think it does. I think what it goes to is the fact that he was prosecuted under the wrong law. It's like they changed the law and everybody went ahead and used the old law. He got prosecuted under things that were not the law. Now, would he have pled guilty? That's a very good question, but there's a lot of things that would have been done different in this case had the standards that applied to the case been that the false statement would have on its own justified denaturalization or inability to naturalize. When you say they changed the law, you don't mean they changed the statute. I'm saying that the Supreme Court interpreted the law in such a way that it was a very substantial change. It changed the elements of a violation of 18 U.S.C. 1425. And specifically, what are you contending it changed as regards to this case? Well, the first thing that it didn't do is it didn't use any of these formulations that are all of that. But the other things that it did was at first it made it clear that the statement has to be material. And that was the issue in the Sixth Circuit Massing Jack cases as they decided that it didn't have to be material. Well, the Supreme Court said it did have to be a material statement. Well, didn't they say that the test for materiality was nexus? Was what? Nexus. No, sir. No, sir. The test for materiality is whether. This was a friendly question. There has to be a nexus between the illegal act and obtaining. Well, yes. That kind of nexus. Yes, sir. Yeah. There has to be a causative, a causation. I think you're using nexus. I'm using causation. There has to be a causation between the false statement and acquiring naturalization. So is it your view that the alleged false statement or the false statement would have to have led to the discovery of facts relevant to ineligibility for citizenship? Well, it's actually two things. It would have on its face demonstrated lack of eligibility, just on its face, or if you have to do some more investigation, then it would have to predictably have led to facts that would have warranted denaturalization or denial of naturalization. So it's a two-pronged test depending on whether you're talking about simply on its face or whether there had to be some investigation. But ultimately, the investigation would have to have led to facts that would have warranted denaturalization or failure to naturalize. Well, the reason I ask is both the indictment and the plea specifically talk about the production of truthful information would have led to the discovery of facts relevant to statutory ineligibility. So it seems to me that the United States government, when they drafted the indictment and worked with you all on the plea, anticipated what the Supreme Court was later going to do. I don't think any of us anticipated at all what the Supreme Court was going to do because the term that's used in the indictment and the term that's used in the factual relevance is facts relevant to. It's not facts that would warrant denaturalization or failure to naturalize. I thought I heard you concede that it doesn't have to be on its face. There is an investigative prong. Well, there's a second prong of that is that if investigation is necessary, the investigation must have predictably led to facts that would warrant the failure to naturalize. So it's a little different, but they used the term it's got to be more than a preponderance because predictably not being a legal term means that it is it's going to happen. It's obvious. It's probable. And so it's not. Your view is that had the plea and the indictment said predictably, you wouldn't be here today, but because it only says relevant, that's different from predictably. It doesn't even, the indictment doesn't even say material. It doesn't use the term material. And that was the issue in Maslinjack from the Sixth Circuit was whether the false statement has to be material in some way. It doesn't have that word, I suppose, but it does say when the production of truthful information would have led to the discovery of facts relevant to an eligibility for naturalization. So it seems to me materiality is in there. I want to give you a chance to make your argument that I think your It's actually materiality that's the difference? Well, it has to be that that was what the Supreme Court was initially deciding in Maslinjack is does the false statement have to be, does it have to be a material false statement? Because, and the Sixth Circuit had said in Maslinjack that it just has to be a false statement. It doesn't make a difference whether it's material or not to the process. And the Supreme Court granted it on that ground, but they went further than just simply saying, yes, it has to be material. They went on, and what they decided is that they provided this new test that Justice Gorsuch succinctly stated that it's two new announced tests, the second with the two subparts. And what they're saying is that the subparts are that on its face, it's got to show ineligibility. Or if some predictably lead to facts that would show ineligibility. And that is a higher standard than the terminology of facts relevant or fair inference or, or suggest, which is the terms used in other cases. And you maintain that it was not predictable that the facts that that that were arrived at pursuant to this investigation, it was not predictable that those facts would have been discovered. Is that your contention? It's not predictable. And we should have had the benefit of this standard and argue that, but we didn't because the standard didn't exist. Well, he ended up pleading that he did not properly and adequately provide support. Well, he did plead to that. Interestingly enough, I mean, it was a plea agreement, but that's that wasn't in the indictment. I understand that. But you're saying that if he had answered correctly when asked whether or not he had children, that they wouldn't have any other questions that would have led to the discovery about whether or not he was paying. I don't know what they would have done. That's, that's part of the problem is that we, we just don't know. Well, it sounds like you're saying it wasn't predictable that they would have discovered. No, no, I don't think it was predictable that they would have done that at all. I mean, it's possible if you, if, if, if you use the government's formulation, which is it affects the decision or it suggests disqualification, that means that, that almost anything will do that. And what the regulations say something about the failure to pay support reflecting on good moral character. It does say that, that the regulations do say that the, well, and why isn't it predictable that they would have made an inquiry about questions that were, that were, that were, that were, that were, that were, that were, that were, that were questionable? Because I don't think that, that that just leads you to, to, to that, to that situation. I mean, you could ask that, but I don't, but given the way this case came out, the fact that it wasn't even in the indictment, that there wasn't, there was hardly any, in fact, there was, I think there was almost no evidence of this in the trial of the case as far as we got, and so we ended up reaching a compromise on, based on what the, some of the things that the evidence had shown up to that point. But the, the, for instance, the issue about, if there was, he was not in good, a person of good moral character, that's in the indictment, but it has nothing, but it's not in the indictment in relation, in relation to supporting his child, it's in the indictment related to two other things. So this is something that, that sort of came out of the, I'm not sure whether government got it, that's what they wanted to do, and that's what we did, because we thought it was the best thing at the time, under the law and the evidence at the time. The thing that we didn't know, and that the, that the government didn't know, and the district court didn't know, is that the Supreme Court was going to change the law. If we do what you're asking and send it back for the district court to decide this, aren't all deals off and it goes back with the full three-count indictment? Actually, I think not, because I think that it goes back to what we pled to, that goes back. But the rest of it, I don't think so, because Jeopardy attached to the first count, and it attached to a number of the allegations in the third count. And so, and it attached, and there wasn't, there wasn't a conclusion of that. So I think Jeopardy attached, and they can't. Mason Jack then affects the outcome, but not the plea agreement? I think it affects the plea agreement, but the, but the effect of the plea agreement is that the plea agreement isn't sufficient under the Mason Jack standards. The, at the, the standards that are set forth in, in the plea are, are, the language just isn't, it doesn't comport with, with Mason Jack. It doesn't say that it will flee. It doesn't say that the, the statement would have led to a showing, a finding that he's not eligible or predictably led to that. It doesn't include any of that. So it's an illegal sentence because the facts aren't sufficient to support the plea under Mason Jack. And the reason we have that requirement of the facts is, is because a person who, who might think they understand the nature of the plea may not really understand that, that the conduct isn't unlawful. Am I reading the Supreme Court correctly, that the government has to establish that the investigation would probably have disclosed the legal disqualification? It uses the term predictably, but, but one of the... It also uses probably. Well, a synonym is, what the synonym is, obviously, probably, expectedly. So I, I, I don't know why the Justice Kagan chose predictably, but that's the word we have, and it's not a legal term. And predictably means probably or, or something, or obviously. So I see my time is up. So we request that the court reverse and remand this case for a new trial. Thank you. You may proceed. Good morning. May it please the Court. Emily Falconer of the United States. I'd like to start with the 28J letter that Mr. Nepal's attorney submitted to the court last week. In particular, he cites the, this court's decision in the Allouche case as, and, and we're actually glad that that case was submitted to the court because it underscores our position that Maslin-Jack did not affect a change in the law, let alone a sea change in the law in the Fifth Circuit. The Allouche case was not actually under the same statute of conviction. It was 1425B as opposed to 1425A. But importantly, the panel in Allouche said, we have always, you know, talked about Maslin-Jack, what happened in that case, and said this court has always required that kind of a showing. Discussing prior precedent, prior cases, this court has always required a showing of materiality in these cases. And the reason for that is that the Supreme Court of Maslin-Jack did not create some kind of a new element of the crime, if the Supreme Court could even do that. All they did was clarify one of the existing elements of the crime. The elements of the crime as defined by the statute are that he has to knowingly procure his citizenship through illegal means, and in this case, through making false statements. And so all the Supreme Court said in Maslin-Jack was just to clarify that when you are procuring something through false statements, that necessarily implies that your false statements cause the outcome, i.e. the conference of the citizenship or immigration status that you were seeking. So there was no major change here. And so to the point that Judge Ho raised earlier, this was something that was anticipated by the parties, was in the parties' mind at every phase of the trial court. And the record could not more argument. He specifically told the jury, the government's going to have to show materiality here. The government's going to have to show that these statements led to, you know, the false statements led to the outcome that he received. That's page 111 of the record. I'm sorry, that's not, that's his opening statement. He also, in his proposed jury charge at page 111 of the record, laid out for the court, proposed a robust materiality standard. In his cross-examination of the government's witness, Officer Gibbons, he specifically asked, doesn't something material mean that it would have to render someone ineligible for citizenship? And she said yes to that, gave that testimony. That standard is at least as robust as the standard that was laid out by the court in Maslin-Jack. So not only was he aware at all times that there was some kind of standard that applied, I mean, this is clear, and it was also, he was advocating for a very robust definition of that term. Additionally, this case was not a surprise to the parties. He pled guilty via an 11C1C agreement that was accepted by the court in February at the sentencing hearing. The Supreme Court granted cert in Maslin-Jack in January of that same year. So the fact that this issue was percolating, going up to the Supreme Court, was aware to the parties before the plea was accepted by the court. There were no surprises. Everyone was aware of this, but it wouldn't, didn't... They have been surprised by the outcome. I don't think so, Your Honor, and the reason for that is twofold. Number one, what the Supreme Court took on cert in Maslin-Jack was a Sixth Circuit decision that was an extreme outlier in terms of what all the other circuits had held. The overwhelming majority view, as we discuss in our nexus requirements, some kind of materiality standard. The Sixth Circuit took the view that there was no such requirement, and that literally shaving 10 pounds off your weight, you know, in your application would be enough to be a disqualifier. So really extreme outlier, and so the Supreme Court took cert in that case to correct error and to resolve that circuit split, but all of the other circuits had taken the view that materiality was required, and yes, it had been formulated in various terms by various courts. The Supreme Court ultimately said, look, here, we're going to formulate a test and lay it out, but what we're missing from this case is any discussion of a real demonstration of how the facts that were admitted in Mr. Nepal's factual resume failed to meet the burden of the standard laid out in Maslin-Jack. He admitted in his factual resume that he lied about facts that forestalled a government investigation that would have led to the discovery of his per se statutory ineligibility for citizenship. If that does not meet the Maslin-Jack standard of materiality, I'm not sure what kind of false statements would. I mean, the court in Maslin-Jack specifically said the facts lied about don't have to be themselves disqualifying. It can be a fact that would have predictably led to the discovery of Section 316 of the regulations. We cite that in our brief. It is a per se mandatory disqualifier if one is lacking good moral character, and that one of those ways that that can be is by failing to provide child support to one's child, and he admitted to that. He admitted that that was a statutory disqualifier, so the government's position is... They had to do that because of the plea charges. Well, certainly, I mean, he did have to admit that he committed the crime. I mean, the court would have to... If I'm understanding the question, he did. That was part of the deal. He was initially charged with much more than falsifying his own application. He was charged with a scheme by which he and others helped a number of Nepalese citizens obtain U.S. citizenship through false pretenses, so yes, I mean, the government dropped that much more severe charge, and that was part of the deal, that he would plead guilty and admit the factual basis. The record reflects from the testimony of the mother of this child that there was a serious doubt as to who the father was. She had claimed two different ones. We disagree, Your Honor. I mean, the number one, the government's position first and foremost is that he admitted in his factual resume in open court at the rearrangement hearing that this was his child, and he failed to support his child, and the Supreme Court has said, and this Court has said that those types of statements are afforded the highest presumption of verity, his personal admission of guilt, and he won't be heard to go back later and challenge his own statements in open court, but to your question, Judge Wiener, the testimony did not establish doubt about who the father was. In fact, the other supposed father, the government flew him in from Nepal as a witness, and he testified that this was not his child. But the mother of the child made conflicting statements between those two as to who the father was. She had taken different positions in the past. No, we disagree, Your Honor. In her testimony, and I don't, I'm sorry, I don't have a precise record site for this, she was asked in her testimony, I believe, whether she had intimate relations with the other alleged father, I believe, and she denied that she had, said that he was the father. But at any rate, in any factual basis case, I mean, what the Court is looking at as its record is the statements made on the four corners of the factual resume, which he clearly admitted that this was his child. And he doesn't seem to really be disputing that now. I mean, my understanding of his position is not that this wasn't his child. He agreed to pay $200,000 in restitution for this child. So that's a lot to do if he somehow has a bad claim that it's not his kid. So one other point I would like to make in terms of some of the questions that have come up about how do we look at this case? Is it a structural error? Is it not? There was a valid plea waiver in this case. The plea waiver, we did move to dismiss the appeal, and our motion was denied. We are not now seeking to enforce the waiver as to the factual basis itself. We believe the Court can make an inquiry as to whether there was, that crime was actually in effect and enforceable, and we intend to enforce it against any other type of claim, including whether he had proper notice of the crime that he was charged with, indictment defects. Anything that could possibly be a structural error is still barred by the plea waiver. It's still in effect, and that's the Hildenbrand case we cite in our brief. This Court says that a panel of this Court can look at the factual basis but still have the waiver be any indictment defects. That's not before the Court. We're seeking to enforce the waiver as to anything like that. There's no question. The only question here is whether he committed a crime as stated under the law as it currently exists. We agree that the Court should look at Maslin-Jack, should apply that standard. We don't agree that it's a different standard than what was being worked with below, but we just want to clarify what is before the Court and what is not. Today, I would also speak to the remedy piece. I think Judge Wiener brought that up. What's the remedy if the Court were to decide that the factual basis is inadequate? The proper remedy would be vacature of the plea agreement, which would put all the parties back to square one. There were accounts of the indictment that were dismissed by the government pursuant to the plea agreement. Under the understanding that he would be pleading guilty, he agreed to a certain sentence going forward, and that was why the government agreed to dismiss those accounts. To the extent that the plea agreement is vacated, the government would seek to reinstate those accounts, and he would re-plead to the entire indictment. Now, he brings up the double jeopardy issue. That's not before this Court right now. It hasn't been briefed or discussed by the parties. Our strong position is that jeopardy would not bar the government in proceeding with the other indictment because the trial was stopped on his motion. It's like when a defendant seeks a mistrial. The government can re-proceed with the charges if the original trial stopped on the defendant's motion, and that's the position we would take if there were a motion to dismiss in the district court, but that would be the proper procedure. If he believes the double jeopardy would bar the government from proceeding, then the proper procedure for that would be for those charges to be reinstated in the district court and for him to move to dismiss the indictment there, so we would ask the Court just not even to weigh into an issue like that. The only issue here is whether there was a factual basis and whether the plea agreement should be vacated as a result. I wanted also to speak to his argument about whether or not Maslin-Jack changes the causation standard and sort of what the standard that must be proved. Is it a higher standard than we would have been looking at before? He says it has to be more than a preponderance of the evidence. The Supreme Court specifically discusses the predictably led to the result language that it used in Maslin-Jack and said specifically, this is not a stringent standard. The Supreme Court was very careful to say, we're using this term predictably would lead to this result because we can't say at this point exactly what would have happened because the proceeding has been closed, witnesses are no longer available possibly. We don't have a crystal ball. We don't know exactly what would have happened. That's why they use this language predictably, which was meant to be a loose standard and somewhat favorable to the government. The reason for that is that the reason we find ourselves in a position of not knowing what would have happened is because the defendant has unclean hands because he falsified his application, lied throughout this proceeding. That is why we don't know what the outcome could be. That's why the Supreme Court specifically took pains to say, we are applying a fairly low bar when it comes to deciding what is or is not, what the outcome would have been here. I just wanted to address that. But at any rate, whatever... In other words, predictably doesn't mean destiny. It means probably. Correct. Correct, Your Honor. It's certainly not, and the Supreme Court specifically said it doesn't mean this would have been the outcome, but probably, likely. And here, I think that the regulation itself clearly bolsters the government's position that this would have probably been the outcome, predictably been the outcome. When you ask about how many children do you have in the statute, the regulation says failure to pay child support is a per se disqualifier. Of course, it's predictable, probable that they would have taken that next step to say, oh, you have this child who's been in another country for many years. Apart from you, have you been supporting this child? I think it's fairly predictable that that inquiry would have been made. It's also predictable, this is not in our brief, but it's something that can be seen in the face of the statutes and regulations. It's also predictable that the government would have made further inquiry into this because Mr. Nepal had five children who he did not disclose. Now, some of them were deceased. He has some question about whether he was required to disclose those children. But he had children with multiple different women, none of whom were the U.S. citizen wife who he disclosed on his denaturalization application. That would also be a question that predictably would have come up is, do you have these children or have these children? Who's the mother? Is it your wife who's helping you seek citizenship? Of course, the fact that he was not in a bona fide marriage with Deborah Devers, his alleged U.S. citizen spouse, that itself would be per se disqualifying. So that was not what was agreed to in the plea agreement, but it's certainly one other thing that would have another inquiry that the government would certainly have made that would have led to more information about this child. And it's also relevant on plain error whether that affected his substantial rights. We do want to reaffirm, and I don't know that he's very vigorously contesting this, that plain error review, in his brief he does, plain error review certainly does govern here. To the extent it was futile or the law that he now wants to rely on did not exist, that does not excuse him from raising his objection to the district court. It was required to be so even if the court has some question about the different language used in Maslinjack versus the Ninth Circuit case that the parties relied on the district court, the question is are those cases so different and is what he pled to so different from what was announced in Maslinjack that it rises to the level of clear or obvious error that would have been obvious to anyone without it even being raised? And he certainly has not met that burden. And indeed our position is that he has not met the burden of showing that there was no, that he did not commit an offense or there was a defect in the factual resume under any standard. And so for that reason we would ask the court to affirm it. All right. Thank you, counsel. Thank you. Rebuttal. One thing we did not get to talk about before is the affirmative defense that the Supreme Court established in Maslinjack. And the affirmative defense is that if you are otherwise eligible for naturalization, it doesn't really matter what you did to try to thwart a government investigation relating to something else. That affirmative defense was present in this case. In this case When you pled that you were statutory ineligible. Pardon me? The plea says statutory ineligible for naturalization. Yes, the plea does say that. I understand that. However, what happened in this case is that Mr. Nepal became a legal permanent resident in March of 1999. He made an application under the three-year marriage provision, but due to delays it was over five years until he had his immigration, his citizenship interview. By that time he was eligible under the five-year provision. So he has this affirmative defense in his case that by the time he got to the interview, he was eligible under another section. We didn't have the ability to argue that in the trial of this case because it didn't exist because it was created by the Supreme Court in Maslinjack. So that is something that we were unable to do. And that's been the problem with the case is that there's a number of different things that would have that the new rules would have made the case differently. The things we could have done were different. We could have raised the affirmative defense and all of this other stuff that he did may have really been not relevant, admissible yes, not relevant to the fact that he was eligible under the five-year requirement. There is an issue about, well, was he a person of good moral character? But I don't think that could be something that's an element of a criminal charge. In a criminal charge, you can't criminalize somebody for a status. The status being that somebody is a drug addict or somebody's an alcoholic or somebody has a certain sexual orientation. It has to be for conduct. This is what the Ninth Circuit said in the Puerta case. So that's another issue that the district judge is going to have to sort out if we get back there. The other thing that I think the court needs to consider is that this is a citizenship case. This is a case where conviction for the offense requires revocation of citizenship. And the Supreme Court has long held as a plain fact that to deprive a person of American citizenship is an extraordinarily severe penalty so that, quote, the facts and the law should be construed as far as reasonably possible in favor of the citizen. And that's the Schneiderman case. So there's lots of legal analysis that has to go, but overriding all of this is the fact that it's a citizenship case, and so you've got to construe the facts in a way that's favorable to the citizen, and that's what we ask you to do in this particular case. The dispute with counsel opposite on what would be the effect if we reversed and remanded. You said it would only be starting with the plea agreement. Counsel opposite said all signals are off. You have all charges. I suspect that if and when we get back to district court or when we get back to district court, we're going to have that argument. And I don't know, I think I agree with counsel, it's not so relevant as to why we're here today, but we're going to have that argument and we're going to have that decision to make because of the unique posture of the case, because jeopardy attached to everything, and it wasn't resolved in a way that made it unattached. So we may have that to address. But we have many, many different things to address when we get back because of the change in the law and the standards, and that's something that the district court has to sort out. The other thing I'd like to say is that Judge Wiener, you brought up the fact that the inconsistent statements the mother made about the parentage of the child. If you recall, we introduced triple certified documents from DePaul that said that she was married to somebody else and this was that person's child. And then in all of her immigration documents that she signed and that she authored, and even in documents in the United States that she signed, she said that in all those documents that his father was this Tulsi Rhonda Hall. So there's lots of evidence that would give somebody great pause to wonder about, is this my child and should I be supporting him? So I see my time is up. So thank you. Thank you, counsel.